**PELTON & ASSOCIATES PC**
Brent E. Pelton (BP 1055)
pelton@peltonlaw.com
Taylor B. Graham (TG 9607)
graham@peltonlaw.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltonlaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **AL LYTHCOTT, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>-against-<br><br>**LINTECH ELECTRIC, INC. and LINDEN J. TUDOR, Jointly and Severally,**<br><br>**Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Al Lythcott ("Lythcott" or "Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

1

## NATURE OF THE ACTION

1.      Plaintiff is an electrician who worked for Defendants' electrical contracting business performing electrical work on public and private projects throughout New York City. For his work, Plaintiff received a set rate each day that did not change with the number of hours that he worked and, when Plaintiff worked in excess of forty (40) hours in a given workweek, Defendants failed to pay him overtime premiums for such hours over 40 in a week. Despite the fact that he was generally working on public works projects, Plaintiff also was not paid the prevailing rate of wages or supplemental benefits for his work on such projects, including for work on New York City Housing Authority ("NYCHA") developments.

2.      Plaintiff brings this action to recover unpaid overtime premium pay owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*.

3.      Plaintiff also seeks to recover unpaid prevailing wages, daily overtime and supplemental benefits which he and the members of the putative Class were entitled to receive for work they performed pursuant to contracts entered into between Defendants and public entities, including but not limited to, NYCHA.

4.      Plaintiff also brings this action for Defendants' failure to provide proper wage notices and wage statements pursuant to the NYLL and the supporting regulations.

5.      Plaintiff brings his FLSA claim on behalf of himself and all other similarly situated employees of Defendants and his NYLL claims on behalf of himself and a Federal Rule of Civil Procedure 23 class of all employees of Defendants in New York working as electricians and helpers.

6.      In addition, Plaintiff brings a claim under 26 U.S. Code § 7434 for fraudulent

filing of information returns on behalf of himself and a Federal Rule of Civil Procedure 23 class of all employees of Defendants who received incorrect Form W2s and/or other false tax documents from Defendants.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district.

9.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff:**

10.      Plaintiff Al Lythcott was, at all relevant times, an adult individual residing in Kings County, New York.

11.      Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto.

**Defendants:**

12.      Upon information and belief, Defendant Lintech Electric Inc. ("Lintech" or the "Corporate Defendant") is an active New York corporation with headquarters located at 3006 Tilden Avenue, Brooklyn, NY 11226.

13.      At all relevant times, the Corporate Defendant has been and continues to be an

3

employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

14.     Upon information and belief, at all relevant times, the Corporate Defendant had gross revenues in excess of $500,000.00.

15.     Defendant Linden J. Tudor ("Tudor" or the "Individual Defendant," and, together with the Corporate Defendant, the "Defendants") is listed as the Chief Executive Officer of Lintech in corporate filings with the New York Department of State, Division of Corporations.

16.     Upon information and belief, Defendant Tudor is an owner and operator of Lintech who sets the company's payroll policies, including the unlawful practices complained of herein.

17.     Throughout the relevant time period, upon information and belief, Tudor was in charge of determining the company's policies with respect to payroll and otherwise running the business of Lintech.

18.     At all relevant times, Defendants employed and/or continue to employ Plaintiff and each Collective and Class Action Member within the meaning of the FLSA, 29 U.S.C. § 203(d).

19.     The Individual Defendant participated in the day-to-day operations of Lintech and acted intentionally and maliciously in his direction and control of Plaintiff and Lintech's other similarly situated employees, and is an "employer" pursuant to the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendant.

20.     All actions and omissions described in this complaint were made by Defendants directly or through their supervisory employees and agents.

4

## COLLECTIVE ACTION ALLEGATIONS

21.     Pursuant to 29 U.S.C. § 207, Plaintiff brings his First Cause of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since February 10, 2013 and through the entry of judgment in this case (the "Collective Action Period") who worked as electricians and helpers (the "Collective Action Members").

22.     A collective action is appropriate in this circumstance because Plaintiff and the Collective Action members are similarly situated, in that they were all subjected to Defendants' illegal policies, including, but not limited to, failing to pay overtime premiums for work performed in excess of forty (40) hours each week. As a result of this policy, Plaintiff and the Collective Action Members did not receive the legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

23.     Plaintiff and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## CLASS ACTION ALLEGATIONS

**The Unpaid Wages Class**

24.     Pursuant to the NYLL and the New York common law, Plaintiff brings his Second through Sixth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Defendants at any time since February 10, 2010 and through the entry of judgment in this case (the "Unpaid Wages Class Period") who worked as electricians and helpers (the "Unpaid Wages Class Members").

25.     The Unpaid Wages Class Members are readily ascertainable. The number and identity of the Unpaid Wages Class Members are determinable from the records of Defendants.

5

For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

26.    The Unpaid Wages Class Members are so numerous that joinder of all members is impracticable.  Although the precise number of Unpaid Wages Class Members is unknown to Plaintiff, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

27.    Upon information and belief, there are in excess of forty (40) Class Members.

28.    Common questions of law and fact exist as to all Unpaid Wages Class Members and such questions predominate over any questions solely affecting individual Unpaid Wages Class Members. Such common questions will determine Defendants' liability to all (or nearly all) Unpaid Wages Class Members. These common questions include:

a.  whether Defendants employed Plaintiff and the Unpaid Wages Class Members within the meaning of the NYLL;

b.  whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Unpaid Wages Class Members;

c.  whether Defendants failed to pay overtime wages to Plaintiff and the Unpaid Wages Class Members for all hours worked over forty (40) in a given week;

d.  whether Defendants breached contracts with local, state and/or federal governmental entities by failing to pay Plaintiff and the Unpaid Wages Class Members, who were third-party beneficiaries of such contracts, at New York State and/or New York City prevailing wage rates;

e.  whether Defendants failed and/or refused to pay Plaintiff and the Unpaid Wages Class Members overtime hours at the prevailing wage overtime rates for all hours

worked on prevailing wage projects in excess of forty (40) hours per workweek or eight (8) hours per day;

f. whether Defendants failed and/or refused to pay Plaintiff and the Unpaid Wages Class Members supplemental benefits on prevailing wage jobs as required by the New York City and New York State prevailing wage schedules;

g. whether Defendants were unjustly enriched by failing to pay Plaintiff and the Unpaid Wages Class Members at prevailing wage rates on prevailing wage jobs;

h. whether Defendants failed to provide Plaintiff and the Unpaid Wages Class Members with proper wage notices and wage statements;

i. whether Defendants' failure to properly pay Plaintiff and the Unpaid Wages Class Members lacked a good faith basis; and

j. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

29. Plaintiff's claims are typical of the Unpaid Wages Class Members' claims. Plaintiff, like all Unpaid Wages Class Members, is an electrician who worked for Defendants pursuant to their corporate policies. Plaintiff, like all Unpaid Wages Class Members, was, *inter alia*, not paid overtime wages for all hours worked over forty (40) in a given workweek; not paid prevailing wages, supplemental benefits or daily/weekly overtime prevailing wages for work performed on NYCHA housing developments; and was not provided with proper wage notice and wage statements. If Defendants are liable to the Plaintiff for the Class claims enumerated in this Complaint, they are also liable to all Unpaid Wages Class Members.

30. The Plaintiff and his Counsel will fairly and adequately represent the Class. There

7

are no conflicts between Plaintiff and the Unpaid Wages Class Members, and the Plaintiff brings this lawsuit out of a desire to help all Unpaid Wages Class Members, not merely out of a desire to recover his own damages.

31.     Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Unpaid Wages Class Members.

32.     <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>. Defendants are sophisticated parties with substantial resources. The individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against the Corporate Defendant. The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

**The Tax Fraud Class**

33.     Pursuant to 26 U.S. Code § 7434, Plaintiff Lythcott brings his Seventh cause of action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following Class:

> All persons employed by Defendants from February 10, 2010 through the entry of judgment in this action (the "Tax Fraud Class Period") who received incorrect Form W2s from Defendants and all other employees for whom Defendants filed fraudulent tax information (the "Tax Fraud Class Members").

34.     <u>The Tax Fraud Class Members are readily ascertainable</u>. The number and identity of the Tax Fraud Class Members are determinable from the records of Defendants.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil

Procedure 23.

35.     <u>The Tax Fraud Class Members are so numerous that joinder of all members is impracticable</u>.

36.     Upon information and belief, there are well in excess of forty (40) Tax Fraud Class Members.

37.     <u>Common questions of law and fact exist as to all Tax Fraud Class Members and such questions predominate over any questions solely affecting individual Tax Fraud Class Members</u>. Such common questions will determine Defendants' liability to all (or nearly all) Tax Fraud Class Members. These common questions include:

    a.   whether Defendants employed Plaintiff and the Tax Fraud Class Members;

    b.   whether Defendants failed to keep true and accurate records for all wages paid and tax withholdings taken by Defendants to Plaintiff and the Tax Fraud Class Members;

    c.   whether Defendants failed to issue the tax authorities accurate information reports which included all wages paid and tax withholdings taken by Defendants to Plaintiff and the Tax Fraud Class Members for the relevant tax year; and

    d.   whether Defendants' failure to file accurate information returns was done willfully and with the intent to avoid certain tax obligations; and

    e.   whether Defendants are liable for all damages claimed hereunder, including but not limited to statutory damages, actual damages, interest, costs and disbursements and attorneys' fees.

38.     The answer to these questions would drive resolution of the litigation. If a judge and/or jury agrees with Plaintiff on these issues, Defendants would be liable to all Tax Fraud Class Members for their tax fraud violations.

39.     <u>Plaintiff's claims are typical of the Tax Fraud Class Members' claims</u>. Plaintiff Lythcott, like all Tax Fraud Class Members, is an electrical employee of Defendants who worked for Defendants pursuant to their corporate policies.  Plaintiff Lythcott, like all Tax Fraud Class Members, was, *inter alia*, issued fraudulent tax documents including Form W2s which did not reflect all of his wages paid and/or tax withholdings taken by Defendants. If Defendants are liable to Plaintiff Lythcott for the claims enumerated in this Complaint, they are also liable to all Tax Fraud Class Members.

40.     <u>Plaintiff and his Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiff Lythcott and the Tax Fraud Class Members, and Plaintiff brings this lawsuit out of a desire to help all Tax Fraud Class Members, not merely out of a desire to recover his own damages.

41.     Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Tax Fraud Class Members.

42.     <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

43.     Defendants are sophisticated parties with substantial resources. The individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.  The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF THE FACTS

### A.    Defendants' Company

44.    At all relevant times, Defendant Lintech has been in the electrical contracting business. Upon information and belief, Defendants currently own, operate and manage an electrical contracting company located at 3006 Tilden Avenue, Brooklyn, New York 11226.

45.    According to the website for Lintech, "Lintech is a MNC Company with head quarters at Brooklyn, USA which created many firsts in Brooklyn in terms of Solar Energy Management System & other electrical & mechanical services.…Over the years our engineers and technicians have encountered many different types of electrical, plumbing, solar plant, mechanical & automobile installation. …Whether you're building out new space, renovating an existing facility, or are in need of building repairs, our staff of skilled professionals can complete the projects to your complete satisfaction." Lintech, according to the web site, "serve[s] many industries, including Automotive, Building Automation, Home Technologies, Medical Devices, Power Tools and Lawn & Garden" and focuses its core business on "project management, in house Voltora electrical sign, electrical installation, planned maintenance, energy saving surveys & reporting, inspection testing of all electrical systems and carbon reduction planning." (http://www.lintechelectric.com)

46.    Upon information and belief, "Derrick" and "Clive" were supervisors of the Corporate Defendant. Upon information and belief, Defendant Tudor is in constant contact with Derrick, Clive and other supervisors to ensure that the company is operating in accordance with their standards and policies, including the unlawful policies complained of herein.

### B.    The Public Works Contracts

47.    Upon information and belief, Defendants have entered into certain contracts, as

11

either a subcontractor or prime contractor, with public agencies to provide electrical work on government projects within the City of New York, including but not limited to certain NYCHA developments, or with prime contractors not currently known, to furnish labor, material and equipment to perform work on the Public Works Projects (the "Public Works Contracts").

48.     Upon information and belief, the Public Works Contracts obligated Defendants to pay Plaintiff and the Class Members at or above the local prevailing wage rates, including any required supplemental benefits and overtime premiums for hours worked in excess of forty (40) hours per week, eight (8) hours per day, hours worked on Saturday and Sunday and hours worked during the evening. Defendants' failure to pay Plaintiff proper prevailing wage rates, supplemental benefits and overtime premiums was a corporate policy that also applied to all of Defendants' other similarly situated employees.

49.     As employees of Defendants who were assigned to work on Defendants' publicly-financed projects, Plaintiff and the Class Members were intended third-party beneficiaries of Defendants' Public Works Contracts.

50.     As required by law, a schedule containing the prevailing rates of wages and supplemental benefits ("prevailing wage schedules") to be paid to the plaintiff Class should have been annexed to and formed a part of the Public Works Contracts. If not annexed to the Public Works Contracts, these schedules were expressly or impliedly incorporated into the contracts as a matter of law and/or public policy.

51.     The promise to pay and ensure payment of the prevailing wage and supplemental benefit rate stated in the Public Works Contracts was made for the benefit of all workers furnishing labor on the sites of the Public Works Projects and, as such, the workers furnishing labor on the sites of the Public Works Projects are the beneficiaries of that promise and the

12

contracts entered into between Defendants and government agencies.

52.     Upon information and belief, in furtherance of the Public Works Contracts entered into by Defendants, Plaintiff and other members of the putative Class performed various electrical tasks, including, but not limited to, running power from basements to sidewalk bridges, lights and elevators, setting and connecting pipes, pulling and connecting wires, boarding and running power from panel boxes, installing breakers, connectors and fixtures, pulling wires through conduits and setting up scaffolding for repairs and asbestos removal.

53.     Upon information and belief, Plaintiff should have been paid at the prevailing rate of wages (including supplemental benefits) of:

    a.  July 1, 2009 through June 30, 2010:  $47.00 plus $39.24 in supplemental benefits per hour;[1]

    b.  July 1, 2010 through June 30, 2011:  $49.00 plus $40.40 in supplemental benefits per hour;

    c.  July 1, 2011 through June 30, 2012:  $49.00 plus $40.16 in supplemental benefits per hour;

    d.  July 1, 2012 through June 30, 2013:  $49.00 plus $40.16 in supplemental benefits per hour;

    e.  July 1, 2013 through June 30, 2014:  $52.00 plus $46.13 in supplemental benefits per hour;

    f.  July 1, 2014 through June 30, 2015:  $53.00 plus $47.54 in supplemental benefits per hour;

---

[1] The rates listed below are those of an "Electrician 'A'" from the Office of the Comptroller, City of New York's § 220 Prevailing Wage Schedules.

13

g. July 1, 2015 through June 30, 2016: $54.00 plus $50.03 in supplemental benefits per hour.

**C. Plaintiff's Work for Defendants**

54.     At all relevant times, Plaintiff performed electrical services for Defendants in New York City.  Throughout his employment period, Plaintiff performed work on numerous NYCHA developments pursuant to a three (3) year contract between NYCHA and Lintech.

55.     **Plaintiff Lythcott** worked for Defendants as a helper for approximately one (1) month in or around September 2012 and an electrician from in or around mid-May 2015 through in or around late October 2015 (the "Lythcott Employment Period").

56.     As an electrician, Plaintiff Lythcott performed electrical work on numerous NYCHA developments, including LaGuardia Houses, Roosevelt Houses, Sumner Houses, Mariner's Harbor Houses, South Beach Houses, Marcy Houses, Isaacs Houses and Pennsylvania-Wortman Houses, from in or around May 2015 through in or around October 2015. As a helper, Lythcott primarily performed work on private homes.

57.     As a helper, Plaintiff Lythcott's duties included breaking concrete and sidewalks, digging holes to run pipes, pulling wires and screwing panel boxes into the walls so that Con Edison could run lines and install meters in front of houses. As an electrician, Plaintiff Lythcott's duties included running power from basements to sidewalk bridges, lights and elevators, setting and connecting pipes, pulling and connecting wires, boarding and running power from panel boxes, installing breakers, connectors and fixtures, pulling wires through conduits and setting up scaffolding for repairs and asbestos removal.

58.     For approximately one (1) month in or around September 2012, when Plaintiff Lythcott worked as a helper, he typically worked four to five (4-5) days per week, Monday

14

through Friday, from between approximately 8:00 am and 8:30 am to between approximately 5:30 pm and 6:00 pm, for a total of approximately forty-five (45) hours per week.

59.     From in or around May 2015 through in or around October 2015, when he worked as an electrician, Plaintiff Lythcott typically worked five (5) days per week, Monday through Friday, from between approximately 7:00 am and 8:00 to between approximately 5:00 pm and 6:00 pm, and sometimes later, for a total of approximately forty-six to forty-eight (46-48) hours per week. Although he was scheduled to work from 7:00 am to 4:00 pm, Plaintiff Lythcott was required to remain on the job site until the work was finished, which was typically one to two (1-2) hours past his scheduled shift.

60.     For approximately one (1) month in or around September 2012, when Plaintiff Lythcott worked as a helper, he typically received fifty dollars ($50.00) per day for his work, after taxes. For approximately two (2) weeks in or around May 2015, Plaintiff Lythcott earned one hundred and fifty dollars ($150.00) per day, after taxes. From in or around June 2015 through in or around October 2015, Plaintiff Lythcott received two hundred dollars ($200.00) per day, after taxes. On the two (2) occasions that Plaintiff Lythcott received a paystub, he observed that his "hourly rate" was thirty-five dollars and eighty-five cents ($35.85). Prior to receiving paystubs that showed an hourly rate, Lythcott had been informed by his supervisors that he would receive either one hundred and fifty dollars ($150.00) or two hundred dollars ($200.00) per day for his work, not an hourly-based pay.

61.     Throughout the Lythcott Employment Period, Plaintiff Lythcott did not receive benefits of any kind, much less correct supplemental benefits for his work on NYCHA housing developments, nor was he paid the prevailing wage in effect at that time.

62.     When he worked as a helper, Plaintiff Lythcott was paid entirely in cash. He

typically received his cash payments from "Clive," a Lintech supervisor. From in or around May 2015 through in or around October 2015, Plaintiff Lythcott received his wages entirely in check. Plaintiff Lythcott typically picked up his checks at Lintech's main office located at 3006 Tilden Avenue, Brooklyn, NY 11226. The checks that Plaintiff Lythcott received often contained the names of the NYCHA development(s) on which he had worked during the relevant pay period.

63.     Throughout his employment period, Plaintiff Lythcott received a flat day rate that did not vary with the number of hours that he worked. Thus, although he typically worked well in excess of forty (40) hours per week, Plaintiff Lythcott did not receive overtime premiums of one and one-half (1.5) times his hourly rate for hours worked in excess of forty (40).

64.     On only two (2) occasions, which were the last two (2) weeks of his employment period, Plaintiff Lythcott received a paystub showing his hourly rate. Despite the fact that Plaintiff Lythcott worked in excess of forty (40) hours for both weeks, the paystubs showed payment for only forty (40) hours per week. At no point prior to the last two (2) weeks of his employment did Plaintiff Lythcott receive a written notification of his regular hourly rate, a paystub showing the number of hours that he worked or any other document showing his regular hourly rate, his overtime rate or his hours worked.

65.     When Plaintiff Lythcott worked as a helper, Clive kept track of the hours that Plaintiff Lythcott and his crewmembers worked and reported this information to the main office. From in or around May 2015 through in or around October 2015, Defendants kept track of the hours that Lythcott worked by requiring him to record his arrival and departure times on a NYCHA sign-in sheet specifically for electricians on the job site, signed by a Lintech supervisor. Although he often signed in and out exactly when he arrived and left the job site, he did not receive proper overtime premiums when he worked in excess of eight (8) hours in a day or forty

16

(40) hours per week.

66.     When employees signed in and out, supervisors "Derrick" and "Clive" would frequently instruct them not to write down their overtime hours on the sign-in sheet.

67.     On at least two (2) occasions in 2015, Plaintiff Lythcott observed investigators on NYCHA job sites. On one occasion, a supervisor, "Clive," instructed Lythcott to ignore any questions about his wages or inform investigators that he made one thousand five hundred dollars ($1,500.00) per week "after tax." On another occasion, when investigators arrived on the job site, "Derrick" instructed Plaintiff Lythcott and several of his coworkers not to speak to them and to move to a secluded area that was out of the investigators' line of sight, despite the fact that they had been assigned to do bridging work and take down lamps at the front of the building.

68.     On at least one occasion, Plaintiff Lythcott overheard "Derrick" inform a coworker that the company "doesn't pay overtime, just flat pay" when a coworker asked why he was not receiving proper overtime pay.

69.     When Plaintiff Lythcott asked Derrick why he was not receiving the applicable prevailing wage, Derrick replied that it was "not on him" and urged him to ask Defendant Tudor. Approximately two (2) or three (3) days after he asked about his wages, Derrick informed Plaintiff Lythcott that work was "slowing down" and that he was not needed on the job site. However, Lintech was still active on multiple projects and called another electrician back to work shortly after Lythcott was terminated.

70.     Although Plaintiff Lythcott was generally permitted to take a thirty (30) minute break, he was occasionally denied a break because he was required to perform other tasks.

71.     In January 2016, Plaintiff Lythcott received a Form W2 from Defendants for his earnings from working for Defendants in 2015. The Form W2 showed that his total federal

income taxes withheld for 2015 was thirty-two dollars and ninety-one cents ($32.91) despite the fact that Lythcott's Federal Income Tax withholdings on the two (2) paystubs that he received, were two hundred and forty-seven dollars and thirty-two cents ($247.32) and fifty dollars and ninety-three cents ($50.93), respectively. While Defendants claimed to have been withholding taxes from Plaintiff's wages each week, and in fact told Plaintiff that the wages he was being paid was "after taxes," the Form W2 reflects an incorrect amount of federal income taxes withheld by the Defendants.

72.     Upon information and belief, Defendants' filing of false information returns for Plaintiff is a corporate policy of Defendants' which applied to all of their employees.

73.     Plaintiff Lythcott has spoken to Defendants' other employees on various job sites, who were also not paid overtime premiums for hours in excess of forty (40) each workweek, who also did not receive correct prevailing wages, and who received Form W2s which reflected an incorrect amount of federal taxes withheld.

74.     Defendants' failure to pay overtime premiums of one and one-half (1.5) times the regularly hourly rate for hours worked in excess of forty (40) per week was a corporate policy that applied to all electricians employed by Defendants.

75.     Upon information and belief, during the period of time for which Plaintiff and the members of the putative Class performed work on NYCHA housing developments, Defendants failed to ensure payment of the correct prevailing rate of wages and supplemental benefits, including overtime pay, to which Plaintiff and other members of the putative Class were entitled.

76.     Defendants failed to provide Plaintiff and their other similarly situated employees with proper wage notices at the time of hire or on February 1 of each year or proper wage statement(s) with every payment of wages or accurate wage statements pursuant to the NYLL.

18

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(On Behalf of Plaintiff and the Collective Action Members)**

77.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

78.     The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the Collective Action Members.

79.     Defendants have failed to pay Plaintiff and the Collective Action Members at the correct overtime wages for all of the hours they worked in excess of forty (40) hours in a workweek.

80.     As a result of Defendants' violations of the FLSA, Plaintiff and the Collective Action Members have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

81.     Defendants' unlawful conduct, as described in this Class and Collective Action Complaint, has been willful and intentional.  Defendants were aware or should have been aware that the practices described in this Class and Collective Action Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the Collective Action Members.

82.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

**SECOND CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(On Behalf of Plaintiff and the Unpaid Wage Class Members)**

83.     Plaintiff, on behalf of himself and the Unpaid Wage Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

84.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiff and the Unpaid Wage Class Members.

85.     Defendants have failed to pay Plaintiff and the Unpaid Wage Class Members the proper overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

86.     Defendants failed to pay Plaintiff and the Unpaid Wage Class Members one and one-half (1.5) times their regular hourly rate for all hours worked in excess of forty (40) per workweek.

87.     Through its knowing or intentional failure to pay Plaintiff and the Unpaid Wage Class Members overtime wages for hours worked in excess of forty (40) per week, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations.

88.     Due to Defendants' violations of the NYLL, Plaintiff and the Unpaid Wage Class Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### THIRD CAUSE OF ACTION
### <u>BREACH OF CONTRACT</u>
**(On Behalf of Plaintiff and the Unpaid Wage Class Members)**

89.     Plaintiff, on behalf of himself and the Unpaid Wage Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

90.     Upon information and belief, the Public Works Contracts entered into by Defendants contained schedules of the prevailing rates of wages and supplemental benefits to be paid to Plaintiff and the employees performing work pursuant to such contracts.

91.     Those prevailing rates of wages and supplemental benefits were made part of the Public Works Contracts for the benefit of the Plaintiff and the other employees performing work pursuant to such contracts. In the event that the contracts or agreements entered into failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were supplemented as a matter of law, requiring Defendants to pay the Plaintiff and Unpaid Wage Class Members prevailing wages, daily/weekly overtime and supplemental benefits for all work performed.

92.     Defendants' failure to pay Plaintiff at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed on Public Works Projects constituted a material breach of the contracts entered into directly or indirectly between Defendants and certain public entities.

93.     As a result of Defendants' failure to pay Plaintiff at prevailing wage rates, he is entitled to relief from Defendants for breach of contract under New York common law of contracts.

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT & QUANTUM MERUIT**
**(Pled In The Alternative)**
**(On Behalf of Plaintiff and the Unpaid Wage Class Members)**

94.    Plaintiff, on behalf of himself and the Unpaid Wage Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

95.    Based on Defendants' failure to pay Plaintiff and the Unpaid Wage Class Members the appropriate prevailing wage rates, Defendants were unjustly enriched at the expense of Plaintiff.

96.    Equity and good conscience require that Defendants pay restitution to Plaintiff.

97.    Upon information and belief, when Defendants entered into the contract, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiff and other employees who performed work pursuant to the contracts.

98.    Plaintiff provided valuable services to Defendants performing prevailing wage jobs for which Plaintiff expected compensation.  Defendants knowingly accepted such services yet failed to pay Plaintiff the reasonable value of such services as defined by the New York State and New York City prevailing wage schedules.

99.    As a result of Defendants' failure to pay Plaintiff at prevailing wage rates on prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiff is entitled to relief from Defendants under New York's common law of unjust enrichment.

100.    As a result of Defendants' failure to pay Plaintiff the reasonable value of the valuable services they rendered, Plaintiff is entitled to relief from Defendants under New York's common law of quantum meruit.

22

## FIFTH CAUSE OF ACTION
## NEW YORK LABOR LAW –WAGE NOTICE VIOLATIONS
### (On Behalf of Plaintiff and the Unpaid Wage Class Members)

101.    Plaintiff, on behalf of himself and the Unpaid Wage Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

102.    At all relevant times, Defendants employed and/or continue to employ Plaintiff and each Unpaid Wage Class Member within the meaning of the NYLL, §§ 2 and 651.

103.    Defendants have willfully failed to supply Plaintiff and the Unpaid Wage Class Members notice as required by Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiff and the Unpaid Wage Class Members as their primary language, containing Plaintiff's and Unpaid Wage Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

104.    Due to Defendants' violations of the NYLL, Plaintiff and the Unpaid Wage Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500.00) per employee, as provided for by NYLL, Article 6, §§ 190 et seq., reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS
### (On Behalf of Plaintiff and the Unpaid Wage Class Members)

105.    Plaintiff, on behalf of himself and the Unpaid Wage Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

106.    Defendants have willfully failed to supply Plaintiff and Unpaid Wage Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing Plaintiff's overtime rate or rates of pay if applicable; and an accurate count of the number of hours worked, including overtime hours worked if applicable.

107.    Due to Defendants' violations of the NYLL, Plaintiff and the Unpaid Wage Class Members are entitled to recover from Defendants one hundred dollars ($100.00) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## FRAUDULENT FILING OF INFORMATION RETURNS
### (On Behalf Of Plaintiff and the Tax Fraud Class Members)

108.    Plaintiff Lythcott, on behalf of himself and the Tax Fraud Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

109.    Defendants filed fraudulent information returns on behalf of Plaintiff Lythcott and the Tax Fraud Class Members in violation of 26 U.S. Code § 7434 by failing to accurately report all taxes withheld from the Plaintiff's wages by Defendants during the relevant tax year.

24

110.    Defendants willfully filed these fraudulent information returns for Plaintiff Lythcott and the Tax Fraud Class Members to avoid certain tax obligations.

111.    For Defendants' willful fraudulent filings, Plaintiff Lythcott and the Tax Fraud Class Members are entitled to damages pursuant to 26 U.S. Code § 7434(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Collective Action Members, the Unpaid Wage Class Members, and the Tax Fraud Class Members respectfully requests that this Court grant the following relief:

(a)    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

(b)    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Unpaid Wage Class, appointing Plaintiff and his counsel to represent the Class and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of the common law and New York State law;

(c)    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Tax Fraud Class, appointing Plaintiff and his counsel to represent the Class and ordering appropriate monetary, equitable and injunctive

relief to remedy Defendants' violation of the federal tax code;

(d)     An order tolling the statute of limitations;

(e)     A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and New York Common Law;

(f)     An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

(g)     An award of compensatory damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA, NYLL, and supporting regulations;

(h)     An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA, NYLL and supporting regulations;

(i)     Fifty dollars ($50.00) per Plaintiff and each Class Member for each workweek that the violations of the wage notice provision of the NYLL, Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the NYLL Class Members as provided for by NYLL, Article 6 § 198(1-b);

(j)     One Hundred dollars ($100.00) per Plaintiff and each Class Member for each workweek that the violations of the wage statement provision of the NYLL, Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500.00) per Plaintiff and each Class Member as provided for by

26

NYLL, Article 6 § 198(1-d);

(k)     An award of the greater of statutory damages in the amount of $5,000 or the sum of any actual damages sustained by Plaintiffs and the Tax Fraud Class Members as a proximate result of the filing of the fraudulent information returns (including any costs attributable to resolving deficiencies asserted as a result of such filing);

(l)     An award of prejudgment and post-judgment interest;

(m)    An award of monetary damages to be proven at trial for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiff and the Class;

(n)     An award of prejudgment and post judgment interest;

(o)     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

(p)     Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by the Complaint.

Dated: New York, New York
February 10, 2016

**PELTON & ASSOCIATES PC**

By: _____

Brent E. Pelton, Esq. (BP 1055)
Taylor B. Graham, Esq. (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff, the putative collective
and class*

28

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Lintech Electric, Inc. and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____          _____          _____
Signature                                          Date                               Printed Name